***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the prior Opinion and Award. Accordingly, the Full Commission AFFIRMS with minor modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff is entitled to temporary partial disability compensation for the period of 11 August 2007 to 22 May 2009 while on restrictions and during which plaintiff *Page 2 
contends he earned less wages.
2. Whether plaintiff is entitled to temporary total disability compensation beginning on 22 May 2009, the date of his termination, when thereafter he contends that he was unable to find suitable employment or was otherwise on medically excused from work?
3. Whether an Independent Medical Examination (IME) at another pain clinic should be approved?
4. Whether a spinal cord stimulator should be approved as a reasonably necessary medical treatment for plaintiff?
5. Whether Plaintiff's Motion to Submit Additional Evidence should be granted?
6. Whether Defendants' Motion to Strike Sections Plaintiff's Brief to the Full Commission and their Motion to Re-Open the Record to Submit Additional Evidence should be granted?
 *********** EVIDENTIARY RULINGS
On 28 March 2011, plaintiff moved to submit additional evidence, and submitted records related thereto that was not part of the record on appeal from the Deputy Commissioner's Opinion and Award. Thereafter, on 20 June 2011, plaintiff submitted additional records related to this Motion to the Full Commission. On 2 July 2011, the Full Commission filed an Order holding a ruling on Plaintiff's Motion in Abeyance. In response, defendants moved to deny Plaintiff's Motion and to Strike related sections of plaintiff's brief. After careful review, the Full Commission finds that plaintiff has failed to show good grounds in support of his Motion, which is HEREBY DENIED. Additionally, Defendants' Motion to Strike related sections of plaintiff's brief is HEREBY GRANTED. *Page 3 
Given the above rulings, Defendants' Motion to Re-Open the Record to submit additional evidence in response to Plaintiff's Motion is HEREBY DENIED.
 *********** DEPOSITIONS 1. The deposition of Dr. Michael David has been admitted.
 2. The deposition of Dr. Jon Silver has been admitted.
 3. The deposition of Dr. Hans Hansen has been admitted.
 *********** EXHIBITS
The parties have submitted a Packet of Various Stipulated Exhibits, which is admitted into the record and marked as Stipulated Exhibit (1) and which includes the following:
 • A Pre-Trial Agreement;
 • Industrial Commission Forms;
 • Plaintiff's Answers to Interrogatories (Set #1 and #2);
 • A Consent Order dated 11 June 2008;
 • Correspondence Letter to the Commission Regarding Nursing dated 14 February 2008 and the corresponding Industrial Commission Order dated 25 February 2008;
 • Industrial Commission Orders dated 8 July 2009, 5 August 2009 and 3 February 2010;
 • Parts of Plaintiff's Personnel File (Job Description, etc.);
 • Payroll Checks;
 • Records from Catawba Valley Medical Center; *Page 4 
 • Records from Hart Industrial Clinic;
 • An MRI, CT Scan and Myleogram from 21 September 2007;
 • Records from Dr. Richard Gilchrist and the Hickory Orthopedic Center;
 • Records from Dr. Billy Jack Parker; and the Cross Roads Family Medical Care;
 • Records from the Southern Rehabilitation Network, Inc;
 • Records from Dr. Stephen M. David;
 • Records from Dr. Hans Hansen and the Pain Relief Centers;
 • Records from Ms. Emily McKinney, RN, BA, CCM and the Industrial Commission Nurses Section and;
 • A Partial Job Search Record.
Defendants have submitted a Print Screen Payment Record, which is admitted into the record and marked as Defendants' Exhibit (1)
 ***********
The undersigned finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing as
 STIPULATIONS]
1. The parties are subject to the N.C. Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction of the parties and subject matter.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is National Interstate Insurance.
4. There is no issue as to misjoinder or nonjoinder of parties. *Page 5 
5. A Form 22 was submitted. Defendants have reviewed plaintiff's 10 August 2010 proposal as to the applicable average weekly wage and agree to an average weekly wage of $945.70 yielding a compensation rate of $630.50.
6. The employee sustained an injury (or started missing time from work because of disease) on or about 11 August 2007, with the exact date to be determined by the Industrial Commission.
7. The injury/disease arose out of and in the course of employment and is compensable.
8. Only medical compensation has been paid.
9. On or about 22 May 2009, plaintiff was justifiably discharged from his employment for misconduct or other fault on the part of the employee.
10. The parties agree to stipulate into evidence after receipt, upon request of either party, all or part of the prior records of Dr. Alfred Geissele.
 ***********
Based upon the foregoing Stipulations and the preponderance of the evidence in view of the entire record, the Full Commission enters the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Full Commission, plaintiff was fifty-one (51) years of age, with his date of birth being 31 October 1959. As of 11 October 2007, plaintiff had been employed by defendant-employer as a truck driver for several years. Prior to that time, plaintiff had worked as a long-haul truck driver.
2. Prior to 11 October 2007, plaintiff had experienced a significant history of significant back problems, not caused by any accidents related to his employment with *Page 6 
defendant-employer. Plaintiff has undergone two prior back surgeries, the most recent of which was a fusion procedure at L4-L5 performed in November 2005. This surgery was not causally related to plaintiff's employment with defendant-employer.
3. Plaintiff testified that after his November 2005 surgery, he was out of work for two to three months. Plaintiff also testified that in early 2006, he returned to work as a truck driver with defendant-employer with assigned lifting restrictions. However, as acknowledged by both plaintiff and his supervisor, Mr. Steve Price, Vice-President of Fleet Operations, plaintiff's duty was to drive the truck and had no responsibility to load or unload the truck. As such, plaintiff's job involved no lifting, and was referred to as "no-touch driving." Plaintiff continued working in this capacity with no problems up to the date of his accident on 11 August 2007.
4. On 11 August 2007, plaintiff slipped and fell backwards while attempting to enter the cab of his truck. Plaintiff landed in a sitting position on his buttocks on the asphalt. As a consequence, plaintiff sustained injury to his lower back, an aggravation of his prior back condition.
5. Late in the evening on 11 August 2007, plaintiff's wife transported him to Catawba Valley Medical Center Emergency Room, where he reported experiencing pain in his lower back that radiated into his left buttocks. Plaintiff was assessed as having musculoskeletal pain, treated with medication and referred for follow-up with his orthopedist, Dr. Geissele.
6. Thereafter, plaintiff underwent treatment at the Hart Industrial Clinic for the period of 16 August 2007 through 26 September 2007. On 21 September 2007, plaintiff underwent a lumbar CT Myelogram which was interpreted to show post-surgical changes at L4-L5 and a disc protrusion at L1-L2.
7. Plaintiff's modified light-duty work restrictions were continued at that time. *Page 7 
These restrictions had been in place since his pre-injury lumbar fusion surgery. With these restrictions plaintiff was able to continue working in his regular no touch truck driving job for defendant-employer.
8. From 17 October 2007 to 21 August 2008, plaintiff was treated by Dr. Russell Gilchrist, a pain specialist. Dr. Gilchrist administered a four or five Epidural Steroid Injections, which plaintiff reported provided little relief. During this period of treatment, Dr. Gilchrist advised plaintiff that he could continue and working with a fifteen (15) pound lifting restriction, which complied with plaintiff's no touch truck driving position with defendant-employer.
9. On 15 July 2008, Dr. Gilchrist noted that plaintiff was becoming depressed over his situation, and that his mood had become angrier over the past few months. As of that date, Dr. Gilchrist was pursuing additional nerve blocks and a possible radiofrequency ablation procedure with plaintiff. On 21 August 2008, plaintiff reported that again, the injections had not provided relief, and Dr. Gilchrist raised the possibility of a spinal cord stimulator trial.
10. The spinal cord stimulator trial was not initially approved by defendants. However, subsequent to the hearing before the Deputy Commissioner, defendants agreed to the spinal cord stimulator trial.
11. On 6 January 2009, plaintiff was examined by Dr. Stephen Michael David of Blue Ridge Bone and Joint, as part of his request for an independent medical evaluation. Dr. David ordered x-rays and reviewed the prior CT Myelogram, both of which showed the post November 2005 surgical changes, and stable fusions at L4-L5 and L5-S1. Dr. David also recommended an MRI with gadolinium. Additionally, Dr. David continued plaintiff's work status.
12. On 30 January 2009, plaintiff returned to Dr. David, at which time the MRI was reviewed, and it revealed a disc protrusion at L1-L2. This was consistent with the results of the *Page 8 
prior CT Myelogram. At that time, Dr. David planned to proceed with a left epidural injection, and continued plaintiff's work restrictions of no lifting over fifteen (15) pounds, which meant plaintiff could continue driving for defendant-employer.
13. On 27 February 2009, plaintiff again returned to Dr. David and reported that the epidural injections provided no benefit, and that he was not interested in pursuing a spinal cord stimulator at that time. Dr. David opined that plaintiff would need continued pain management and referred him back to Dr. Hans Hansen, who had previously treated plaintiff. Additionally, Dr. David did not alter plaintiff's work restrictions and job status.
14. On 4 March 2010, plaintiff was examined by neurosurgeon Dr. Jon Silver at defendants' request. Dr. Silver reviewed the January 2009 lumbar MRI, and assessed plaintiff as having post-laminectomy syndrome related to his November 2005 surgery. Dr. Silver did not recommend further surgery, and allowed plaintiff to continue his work as a truck driver for defendant-employer which involved no lifting.
15. On 25 March 2009, plaintiff returned to Dr. Hans Hansen, a pain specialist, who had last seen plaintiff in April 2005. Dr. Hansen assessed plaintiff as having degenerative lumbar spinal disease for which he continued conservative treatment. Additionally, at that time, Dr. Hansen again raised the possibility of a spinal cord stimulator and continued plaintiff's work status.
16. On 21 April 2009, plaintiff returned to Dr. Hansen, and reported feeling better. Dr. Hansen's notes from that date reflect that plaintiff was essentially at maximum medical improvement. Dr. Hansen did not believe further interventions were warranted, and recommended conservative follow-up treatment as needed. Additionally, Dr. Hansen counseled plaintiff regarding the need to stop his cigarette smoking. When Dr. Hansen next saw plaintiff *Page 9 
on 19 May 2009, he again counseled plaintiff about smoking and recorded in his notes "cigarette cessation is mandatory for best outcome."
17. On 21 May 2009, plaintiff returned to by Dr. Hansen and underwent a recommended radiofrequency ablation procedure, which required plaintiff to be medically excused from work. Plaintiff tolerated the procedure well, and thereafter was released by Dr. Hansen to work with defendant-employer with his previously assigned restrictions. On 2 June 2009, plaintiff again returned to Dr. Hansen and reported that there was no significant improvement in his pain after the radiofrequency procedure. However, at that time, plaintiff reported experiencing less of lumbar axial pain and more of left lumbar radicular pain into his thigh.
18. As stipulated, on or about 22 May 2009, plaintiff's employment was terminated "for cause." Pursuant to plaintiff's testimony the cause involved a truck collision.
19. On 16 June 2009, plaintiff's returned to Dr. Hansen and reported that he could not work, or return to work. In response to plaintiff's self-report that "he couldn't go back to work" Dr. Hansen wrote plaintiff out of work.
20. When plaintiff returned to Dr. Hansen on 7 July 2009, plaintiff reported to Dr. Hansen that he had applied for disability. Dr. Hansen's response in his notes was "I do think he is a rather young vital individual, that can probably either be retrained or have the opportunity to return to some work related activities." Dr. Hansen further commented "I do not see him as disabled."
21. All three physicians who have examined plaintiff and have testified, Dr. Hansen, Dr. Silver and Dr. David, agreed in their testimony, and the Full Commission so finds, that plaintiff's injury by accident of 11 August 2007 aggravated his pre-existing underlying post-surgical *Page 10 
back condition. All the physicians also agree, and it is found by the Full Commission, that as demonstrated by objective tests such as an x-ray and CT Myelogram, plaintiff has a stable lumbar fusion related to his November 2005 surgery. Moreover, although the November 2005 procedure aggravated the surrounding tissue, the ultimate results of that surgery were not affected by plaintiff's 11 October 2007 injury by accident and remain stable.
22. Although the 11 October 2007 injury by accident aggravated plaintiff's prior back condition, it did not result in any added work restrictions. Plaintiff was already working under restrictions with no lifting, no loading and unloading in his position with defendant-employer.
23. Dr. Silver and Dr. David agreed that during their treatment of plaintiff, he could continue working as a no touch truck driver. Although he later removed him from work due to subjective complaints, Dr. Hansen also expected that plaintiff could perform "modified" work.
At the time of plaintiff's termination, he had not been removed from work except for the medical treatment received on 21 May 2009, the radio frequency ablation.
24. When Dr. Hansen thereafter took plaintiff out of work, as Dr. Hansen testified, it was based primarily upon plaintiff's subjective report that he (plaintiff) considered that he could not work. This report was made to Dr. Hansen after plaintiff had been terminated for cause from his employment with defendant-employer. Plaintiff also admitted in his testimony that his back condition did not change following his termination. Dr. Hansen's own notes indicate that he did not consider plaintiff to be disabled.
25. Dr. Hansen acknowledged that he could not state that plaintiff's condition changed after his 22 May 2009 termination going forward. Pursuant to Dr. Hansen's testimony, plaintiff continued to smoke, which can cause a progressive decline post lumbar fusion. Dr. Hansen has repeatedly counseled plaintiff that it is important that he stop smoking. *Page 11 
26. Dr. Silver and Dr. David testified, and the Full Commission so finds, that plaintiff was capable of continuing to work as a truck driver when they examined him. Dr. Hansen's assessment that plaintiff was not capable of working after 22 May 2009 is given little weight as it was based primarily upon plaintiff's subjective complaints and because it was made at a time that coincides with the termination of plaintiff's employment for cause.
27. At the time plaintiff's employment was terminated, defendant-employer continued to have suitable work available that was within plaintiff's restrictions. Defendant-employer had plenty of no touch truck driving available for plaintiff. If plaintiff had not been terminated for cause, he would still have work available with defendant-employer.
28. Plaintiff has been evaluated by an orthopaedic specialist, a neurosurgeon, and has been evaluated and treated by two pain management specialists, Dr. Russell Gilchrist and Dr. Hans Hansen. These physicians have confirmed plaintiff's need for ongoing medical treatment and pain management. Plaintiff's request for evaluation by another physician or different pain management specialist or for further independent medical evaluation has not been shown to be reasonably medically necessary.
29. The evidence does establish that plaintiff continues to be in need of pain management and that the same should be approved. A spinal cord stimulator trial has been recommended as a possible treatment option by Dr. Gilchrist and by Dr. Hansen, both pain management specialists, and the same is found to be a reasonable medical treatment option.
30. Attached to the Form 22 in evidence are printouts showing Plaintiff's gross and net pay for the periods from 19 October 2007 through 11 April 2008. Defendants failed to submit the detailed statement of payouts paid to Plaintiff for the time period from May 2008 to May 2009, which they indicated at hearing would be provided to the Commission. However, *Page 12 
defendants submitted Defendants Exhibit (1), which showed plaintiff's gross wages for the years he worked for the employer, 2005 through 2009.
31. The only year with a significant difference in the wages earned by plaintiff while working for the defendant-employer is 2005, the year plaintiff had his back surgery. Plaintiff actually earned more in 2007 and 2008 than he had earned in any prior years of his employment, 2004, 2005, or 2006. Plaintiff's employment was terminated as of 22 May 2009. He was out of work on 21 May 2009 and possibly 22 May 2009 for medical treatment, the radio frequency ablation. Therefore, for the year 2009, if he worked every week from 1 January 2009 through 20 May 2009, plaintiff worked about twenty (20) weeks for defendant-employer. Plaintiff's gross wages of $20,235.89 for 2009 would equal about $1,011.79 per week, which is greater than Plaintiff's average weekly wage of $945.70, which he was earning at the time of his injury by accident on 11 August 2007.
32. On 11 June 2008, a Special Deputy at the Commission approved a Consent Order entered into by the parties. Pursuant to that Consent Order, which the Full Commission specifically finds is enforceable, defendants were to pay plaintiff a sum of $2,500 in satisfaction of temporary total and temporary partial disability compensation for the period of 11 August 2007 through 21 May 2008, with an attorney's fee of twenty-five percent (25%) going to plaintiff's counsel.
33. Also as set forth in the Consent Order, Dr. Russell Gilchrist at Hickory Orthopaedics, or his successor, was approved as an authorized treating physician for plaintiff, and radiofrequency ablation treatments were approved to be provided by defendants.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, and upon the preponderance *Page 13 
of the evidence in view of the entire record, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 11 August 2007, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As shown by the medical opinion testimony, this accident aggravated plaintiff's pre-existing back condition. N.C. Gen. Stat. § 97-2(6); Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
2. "Disability" is defined by the Workers' Compensation Act as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2 (2010). Plaintiff has the burden of showing he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment.Hilliard v. Apex. Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
3. To support a conclusion of disability, the Commission must find "(1) That the plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment, (2) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment, and (3) that the plaintiff's incapacity to earn was caused by his injury. Hendrix v. Linn-Corriher Corp.,317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986) (citingHilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).) In order to receive disability compensation under the Worker's Compensation Act, the mere fact of an on the job injury is not sufficient; the injury must have impaired the worker's earning capacity. Brown v. S NCommunications, Inc.,124 N.C. App. 320, 329, 477 S.E.2d 197, 202 (1996).
4. When an employee who has sustained a compensable injury and has been *Page 14 
provided light duty or rehabilitative employment, is terminated from such employment for misconduct or other fault on the part of the employee, the employee may be deemed to have constructively refused suitable employment and therefore is barred from receiving compensation. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996). The employee's inability to earn wages at pre-injury levels is no longer caused by the injury; rather, the employee's misconduct is responsible for his inability to earn wages at pre-injury levels. Williams v. Pee DeeElectric Membership Corp.,130 N.C. App. 298, 301, 502 S.E.2d 645, 647 (1998).
5. The Seagraves test places the burden on the employer initially to show that: "(1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury." McRae v.Toastmaster,358 N.C. 488, 493, 597 S.E.2d 695, 699 (2004) (citingSeagraves, 123 N.C. App. at 234, 472 S.E.2d at 401). Once the employer establishes that the employee was terminated for misconduct or fault unrelated to the compensable injury, the employee has the burden of showing that his inability to find employment at a wage comparable to that earned prior to the injury is due to the work-related disability. Seagraves,123 N.C. App. at 234, 472 S.E.2d at 401.
6. Where plaintiff was terminated for cause and the employer continued to have available suitable work within the plaintiff's restrictions, plaintiff has constructively refused suitable employment and is not entitled to receive compensation.Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996). Where plaintiff's injury by accident did not change the restrictions under which he was working, plaintiff has otherwise failed to show that he has been unable to work due to his injury by accident, rather than due to *Page 15 
his pre-existing limitations and the general economy. Id.
7. Although plaintiff sustained a compensable injury by accident on 11 August 2007, the greater weight of the medical opinion fails to show that the accident resulted in the imposition of any further or additional work restrictions that impacted plaintiff's ability to perform the work he was doing as a no touch truck driver.Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993); Holley v. ACTS,Inc., 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003);Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996).
8. Plaintiff has not met his burden of proof with regard to disability relating to the
11 August 2007 injury. Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993); Holley v. ACTS,Inc., 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003);Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996). Plaintiff continued to work in the same capacity after his 11 August 2007 injury until his termination for cause on 22 May 2009. Id. The greater weight of the evidence establishes that plaintiff's condition did not worsen after 22 May 2009.Id. Plaintiff remains capable of performing the same light duty work that he was performing before his 11 August 2007 injury, and any claim for ongoing total disability must be denied as not supported by the greater weight of the evidence. Russell v. LowesProd. Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993);Brown v. S N Communications, Inc.,124 N.C. App. 320, 329, 477 S.E.2d 197, 202 (1996).
9. Plaintiff is in need of additional medical treatment, including ongoing pain management and the same should be approved as reasonably necessary. A component of this as recommended by the treating physicians, a spinal cord stimulator trial should be approved as reasonably necessary. N.C. Gen. Stat. §§ 97-2(19), 97-25. *Page 16 
10. Defendants are further bound to comply with the Consent Order approved by the Commission on June 11, 2008. The same is enforceable as an Order of the Commission. See Rule 503, Workers Compensation Rules of the Industrial Commission.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following
 AWARD
1. Plaintiff's claim for partial disability compensation from 22 May 2008 until 22 May 2009, when his employment was terminated for cause, is Denied.
2. Plaintiff's claim for total disability compensation from 22 May 2009 and continuing is Denied.
3. Plaintiff's request for additional medical treatment by a pain specialist and specifically for a spinal cord stimulator trial is Approved. Defendants shall provide Plaintiff ongoing medical care for his back, including pain management and a spinal cord stimulator trial.
4. Plaintiff's request for a further independent medical examination by another physician or pain management clinic (another IME) is Denied as not reasonably necessary.
5. Defendants shall pay all cost, including the expert witness fees to all the expert medical witnesses. To the extent that any prior order inadvertently may have assessed those fees to be paid by Plaintiff, the same is reversed. All expert witness fees owed are to be paid by Defendants.
6. Defendants shall comply with the Consent Order approved by the Commission on 11 June 2008.
IT IS FURTHER ORDERED that this matter is HEREBY REMOVED from the Full *Page 17 
Commission hearing docket.
This the ___ of _____ 2011
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/_____________ LINDA CHEATHAM COMMISSIONER
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1